UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KATRINA CHADBOURNE | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17–CV–00284 |
| | § | |
| MARATHON PETROLEUM | § | |
| COMPANY LP, *et al.* | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff's Objection to and Motion to Supplement Defendants' Proposed Administrative Record ("Motion to Supplement") (Dkt. 17) has been referred to this Court by United States District Court Judge George C. Hanks, Jr. Dkt. 36. This Court has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). Having considered the Motion to Supplement, the response, and applicable legal authorities, the Court overrules Plaintiff's objection and denies the Motion to Supplement.

### I. BACKGROUND

Plaintiff Katrina Chadbourne ("Chadbourne") is an employee of Blanchard Refining Company, a wholly owned subsidiary of Defendant Marathon Petroleum Company LP. Marathon Petroleum Company LP created the Marathon Petroleum Long Term Disability Plan ("LTD Plan"), which is an Employee Retirement Income Security Act ("ERISA") plan that provides long term disability benefits to eligible plan participants. Chadbourne participated in the LTD Plan, and sometime prior to February

2016, she submitted a claim for long term disability benefits based on her fibromyalgia diagnosis.[1]

On February 9, 2016, the LTD Plan's third-party administrator acknowledged receipt of Chadbourne's claim. The third-party administrator denied Chadbourne's LTD claim on May 23, 2016. Chadbourne promptly appealed the denial of her claim to the LTD Plan Administrator. The LTD Plan Administrator, acting through Assistant Plan Administrator James P.F. Dowling, M.D., denied Chadbourne's appeal on October 17, 2016.

On September 5, 2017, exactly 323 days after Dr. Dowling's decision, Chadbourne's "counsel forwarded correspondence to . . . [Dr.] Dowling asking him to reconsider his denial of Plaintiff's appeal relying on the conclusion that 'there is no objective evidence associated with this diagnosis' (fibromyalgia)." Dkt. 17 at 2. Attached to the September 2017 correspondence were various documents reflecting the following:[2]

- The National Institutes of Health (NIH), a part of the U.S. Department of Health and HumanServices, recognizes fibromyalgia as a common and chronic disorder event though there is no generally accepted, objective test for fibromyalgia and recognizes that a diagnosis of fibromyalgia can be made based on the criteria established by the American College of Rheumatology (ACR).

---

[1] Fibromyalgia is a form of chronic pain syndrome or soft-tissue rheumatism, which are broad terms used to describe a group of disorders that cause pain and stiffness around the joints and in muscles and bones.

[2] The Court collectively refers to the September 2017 correspondence and its attachments as "the Reconsideration Request."

- The Social Security Administration relies on the ACR Diagnostic Criteria to determine if a person has a medically-determinable impairment of fibromyalgia.

- The Centers for Medicare and Medicaid and National Center for Health Statistics have formally recognized fibromyalgia by giving it its own ICD diagnostic code in their International Classification of Diseases, 10th Revision, Clinical Modification.

*Id.* at 4–5.

On September 20, 2017, only 15 days after sending the Reconsideration Request, Chadbourne filed this suit. Dkt. 1. Fifteen days later, on October 5, 2017, which is exactly 30 days after Chadbourne sent the Reconsideration Request, Dr. Dowling responded to the Reconsideration Request by "notify[ing] Plaintiff . . . that he did not reconsider his denial of Plaintiff's appeal as requested because his decision of October 17, 2016 was final and Plaintiff had exhausted all of her administrative remedies."[3] Dkt. 17 at 5.

Based on this sequence of events, Chadbourne seeks to supplement the administrative record in this case to include the Reconsideration Request and Reconsideration Denial. Defendants rejected and continue to refuse Chadbourne's request to supplement the administrative record. Having failed to convince Defendants to supplement the administrative record, Chadbourne now asks the "Court to sustain [her] objection to Defendants' refusal to supplement the administrative record, [and] grant [her] motion to supplement the administrative record." *Id.* at 8–9.

---

[3] This Court refers to the October 5, 2017 letter as the "Reconsideration Denial."

3

## II. APPLICABLE LAW

ERISA provides the federal courts with jurisdiction to review determinations made by certain benefit plans. 29 U.S.C. § 1132(a)(1)(B).

> When assessing factual questions in benefits cases, "a long line of Fifth Circuit cases stands for the proposition that . . . the district court is constrained to the evidence before the plan administrator." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir.1999) (collecting cases), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Before filing suit, "the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it." *Id.* at 300. Such a "fair opportunity" must come in time for the administrator to "reconsider his decision." *Id.*

*Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 312 (5th Cir. 2015). "The plan administrator has the obligation to identify the evidence in the administrative record and the claimant must be afforded a reasonable opportunity to contest whether that record is complete." *Colvin v. 88 Bd., Joint Bd. of Trs. for 88 Plan*, No. SA-17-CV-974-XR, 2018 WL 1756738, at *3 (W.D. Tex. Apr. 11, 2018) (citing *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000)).

"Once the administrative record has been determined, the district court may not stray from it but for limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim." *Bratton*, 215 F.3d at 521.

4

## III. LEGAL ANALYSIS

Chadbourne seeks to include the Reconsideration Request and Reconsideration Denial in the administrative record for purposes of this Court's review. She first argues that the Reconsideration Request was "made available to the administrator prior to the filing of the lawsuit and in a manner that gave the administrator a fair opportunity to consider it." Dkt. 17 at 6.

As detailed above, Chadbourne's counsel submitted the Reconsideration Request almost a year after her LTD claim was denied on appeal, and only 15 days before this suit was filed. In the Reconsideration Denial, which is dated after this lawsuit was filed, Dr. Dowling indicated that he did not possess a written authorization for Chadbourne's counsel, "so the Plan cannot respond and has no obligation to disclose any information requested in your letter." Dkt. 17-3 at 43. Dr. Dowling also stated that his decision denying LTD benefits had been final since October 2016, and Chadbourne had already exhausted the LTD Plan's administrative procedures with respect to her claim. *Id.* These facts are substantially similar to—and slightly worse than—the facts discussed by the Fifth Circuit in *Killen*.

In *Killen*, the Fifth Circuit reviewed a district court's decision to deny a claimants attempt to supplement the administrative record. Pertinent here, the *Killen* court explained: "Here, the file was already closed and [Claimant] had exhausted two internal appeals. We cannot say that such a late submission of evidence, only four weeks before

[Claimant] filed suit, gave [the Plan Administrator] the 'fair opportunity' contemplated by *Vega*." *Killen*, 776 F.3d at 312.

Here, Chadbourne's file had been closed for almost a full year before her counsel sent the Plan Administrator the Reconsideration Request. At that time, Chadbourne had already exhausted the LTD Plan's administrative procedures. And again, the Reconsideration Request was submitted just 15 days before this suit was filed. The Court finds that under these facts, Chadbourne's attempt to add additional evidence to the administrative record by submitting it to the Plan Administrator was ineffective because the submission of the Reconsideration Request a mere 15 days before filing suit did not provide the Plan Administrator a fair opportunity to consider it. Thus, neither the Reconsideration Request nor the Reconsideration Denial should be included in the administrative record. *See Bratton*, 215 F.3d at 521 ("the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it") (citation omitted).

Chadbourne next argues that supplementation of the administrative record is warranted because the Reconsideration Request "will assist the court in understanding the medical terminology and practice related to Plaintiff's disease of fibromyalgia." *Id.* at 8. This argument conflates two distinct concepts: (1) supplementation of the administrative record; and (2) consideration of evidence *beyond* the administrative record. As discussed above, the Court has determined the Reconsideration Request was not submitted to the Plan Administrator in a timely manner and supplementation of the administrative record

6

is therefore inappropriate. This is all the Court can decide at this time. The question of whether the Court will consider evidence *beyond* the administrative record is for another day.

To be clear, the Reconsideration Request has two components: (1) Chadbourne's counsel's letter to the Plan Administrator ("Counsel's Letter") and (2) medical information related to fibromyalgia that was compiled/promulgated by various agencies ("Medical Pamphlets"). The Court can imagine no scenario in which it would rely upon Counsel's Letter to assist in understanding fibromyalgia. The Medical Pamphlets, on the other hand, represent a type of evidence that courts have utilized (when necessary) even though outside the administrative record. *See, e.g., Dowdy v. Hartford Life & Acc. Ins. Co.*, 458 F. Supp. 2d 289, 292 n.5 (S.D. Miss. 2006) ("Although [Defendant] takes issue with plaintiff attaching this [fibromyalgia] brochure to her response to its motion for summary judgment, this court is allowed to look *beyond the administrative record* at evidence that assists in understanding the medical terminology or practice related to a claim.") (citation, internal quotation marks, and alterations omitted) (emphasis added). Thus, although the Court declines to order the Defendants to include the Reconsideration Request in the administrative record, Chadbourne can certainly request as part of a dispositive motion that the Court consider the Medical Pamphlets for the purpose of assisting the Court in understanding relevant medical terminology and medical practices.

## IV. CONCLUSION

For the reasons stated above, the Court OVERRULES Chadbourne's objection to Defendants' proposed administrative record, and DENIES Chadbourne's Motion to Supplement (Dkt. 17).

SIGNED at Galveston, Texas, this 23rd day of August, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE